Gerald Kaufmann et al. v. Federal Aviation Administration et al. are going to have to sit 15 minutes for the petitioner and 15 minutes will be shared by the respondent. Mr. Fitzgerald, you may proceed. Good morning. May it please the Court, I'd like to reserve two minutes for rebuttal. Very well. Thank you. May it please the Court, this case centers on the Bowman Field Airport Area Safety Program, described by one FAA official as being likely to be very controversial because of older and historic homes and neighborhoods surrounding the airport and as a, quote, loosely based on our regulations, end quote. I represent Carol Kaufmann, who's the landowner, whose land is within the program area and who has been approached by the Louisville Regional Airport Authority and asked under pain of condemnation to convey an easement, an abrogation easement, far more onerous than is justified by the stated purpose of the safety program, which is to remove obstructions to the airspace needed to request the FAA to restore night flights under instrument-only conditions. The other petitioners are property owners in the area whose use and enjoyment of their properties are affected by this tree topping and removal program and an unincorporated association called Plea for the Trees, all of whom were consulting parties in the historic preservation, so-called 106 process. Let me ask you this. Why does this case need to continue to be before us for review by a federal appeals court since the, as I understand from the record, there's no longer a request for FAA funding so that the federal environmental requirements may no longer have to be met? And if it's the case that the situation is being reduced to a state eminent domain situation, should we be reviewing this at all? And I guess this also relates to the whole standing, the issue of standing here. Shouldn't this be in state court for eminent domain rather than before us at this point in time? Judge, that is the heart of the matter here. The so-called airport safety program, which was designed by Bowman Field, First of all, this review is of an FAA order and is placed here by federal statute. This is the appropriate venue for looking at the compliance by the FAA with the National Historic Preservation Act, the National Environmental Policy Act, and Section 4F of the Transportation Act. The question of whether the LRAA as the airport sponsor is an appropriate party here is a separate related question. If you look at the airport safety program, it is a continuum. It began in 2012 with the FAA saying to the LRAA, the local airport authority, you can no longer allow night flights under instrument-only conditions because you have what look to be objects protruding into the airspace. There's airspace projected on all four of the runaways. That triggered the development by the LRAA of the airport area safety program, which was identified and described by the LRAA as being a program intended to comply with the terminal instrument procedures, the so-called TIRPS guidance by the FAA, in order to identify the obstructions, to remove those that are hazards, in order to get FAA approval to reinstate those flights. The issue of the acquisition of easements and the cutting of the trees is one small component of a federal effort from start to finish. Navigable airspaces are federal jurisdiction, a matter of federal sovereignty, and the airport sponsor, in this case for the Bowman Field Airport, has a continuing federal obligation to maintain the airspace in a safe condition. That is what triggered this airport safety program. It's not as if the LRAA woke up one morning and said, you know, we haven't acquired enough easements lately. Let's go get 40 more and chop 104 trees down. What happened was they were told you could no longer allow night flights under instrument-only conditions, which affects 5% of their fleet 9% of the time. You can no longer allow that until you identify the obstructions, which was done with federal money. You do the environmental review under NEPA, which was done with federal money. You then submit to us the obstructions that you've identified, and the FAA identified which of those were hazards. This was an ongoing federal partnership that occurs under the federal regulations that govern the navigable airspace. Let me ask you this, though. If the airport is no longer seeking federal funding, on what basis are these federal environmental laws having to be complied with in terms of requiring a federal environmental review? Certainly. If no federal funding is being sought and there's no you've got a local airport here who now says that they're trying to obtain the land to get rid of the trees under state eminent domain law because the trees provide an obstruction for flights where the planes are, I guess, landing and taking off under instrument flight rules. So I guess if there's no federal funding involved, your contention is the federal laws nevertheless still requires a federal environmental review. Is that it? Yes, that is. The FAA undertook the review under NEPA under the National Historic Preservation Act under Section 4F because they recognize that this is a federal action. The question of whether the state of the state of the You said they recognize, who's they? The FAA. That's why they undertook the review under NEPA and under the National Historic Preservation Act. But when they undertook this, federal funding was being requested and the airport claims that the process was taking so long that they abandoned their quest for any federal funding here. But the FAA continued and completed the process that bears the name of the Louisville Regional Airport Authority. The problem for you is that so what if you obtain a ruling that said the FAA was in error to conclude there was no significant environmental impact. What do you have? Nothing because the LRAA is going to proceed to do the program otherwise not using state funding and not using federal funding and not implicating any of the federal statutes. But Judge, we were hoping that in fact this court will enjoin them until the FAA completes the process properly that they will stop them from further violations of NEPA. And how could we do that? Well, Judge, there is a continuing federal obligation on a non-federal actor under the Council on Environmental Quality's regulations which says that you will refrain from prejudicial commitment of resources in advance of the completion of the NEPA process. The LRAA flagrantly violated that. And in fact, as late as October 4th, a memo which is cited in our Well, I mean, the point is that at this point, I'm not sure that the airport authority was ever required to go the federal route in the first place or whatever it did in going the federal route. The reason for doing that has disappeared. Judge, it is not. They have a continuing obligation as part of a binding commitment required. If the Louisville Airport Authority decides to continue with this program, I can't see how we would do it with state funding. I'm not sure how a federal court would gallop in and enter an injunction against it. Your Honor, federal action under the National Environmental Policy Act is not limited to federal funding. It is limited to federal approval, federal assistance, federal support, and as this Court has recognized in the Slater case, it is not the fact that there is federal funding or not for this particular component of the program does not defederalize it. What it does is try to segment it in violation of NEPA. They took federal money. First of all, they began this process because they were restricted by the federal government from using night flights under instrument conditions. Well, we understand all that. Your Honor, if you would indulge me, they took federal money for the analysis, federal money for the identification of the obstructions, and then tried to actually do the damage using state money and said, oh, that has nothing to do with the fact that this whole program was designed. The trees were identified with the sole purpose of getting FAA approval at the end of the process for reinstatement of those flights. Under this circuit's prior rulings in Slater, under the profit case, under the Silva case, which we've all cited, you can't four and a half years into a federal NEPA process suddenly say, oh, you know, it's taking too long, so we're just going to use our own money, do the damage, and then come back for federal approval at the end of the process. The identification of the trees. What federal approval are you talking about that they would have to come back for? The reinstatement. Wait a minute. We can't both talk at the same time. I'm sorry. I apologize, Your Honor. That they would come back for at the end of the project. They will have to come back to seek federal approval for reinstatement of the night flight that were limited in February of 2012. In order to do so, they will have to demonstrate that those obstructions that were identified by the FAA. Well, at that point, all they're doing is asking for a safety certification. Then why would that make a difference in terms of whether the trees should be cut down? The trees would be gone. Well, the trees are not all gone at this point. The question is not just whether the trees would be removed. Everybody is concerned about safety at the airport. Although they've had, I think, one incident where somebody actually ran into a tree, they've had numerous where people ran out of gas and ended up in people's yards. So perhaps a focus on making sure that everybody has enough gas is a good idea as well. The problem here is the mitigation that's associated with this. The LRAA and FAA still do not recognize that these are historic neighborhoods and the trees are an integral part of that landscape. What they proposed, what they said, without any analysis is that giving Well, why wouldn't that be addressed in the eminent domain? It's not an eminent domain issue, Judge. It's a question of the mitigated FONSI. What happened here is they took into account the mitigation and said because of that mitigation, you're going to replace 100-year-old plus mature trees with two saplings. They said that will help retain the value and the character of these neighborhoods. That's absurd on its face. What they did is they blew over any meaningful analysis under NEPA of the impact. They blew off the Advisory Council on Historic Preservation, who said there is an adverse impact here. They basically said, thank you very much. We're going to go ahead anyway. Now, they had preordained that, and that's one of the things that's Can I ask a question? Yes, please. Can I read somewhere in this record? I mean, this is a historic tree neighborhood, and how many trees are there, mature trees, are there in the overall neighborhood, in the area? The number of total trees, I do not know. Thousands, right? Judge, I really don't know, and I'm not going to hazard a guess. Isn't there something in the record about that? Yes, they indicated part of the reason that the FAA decided that despite the Advisory Council's recommendation that this wouldn't be an adverse effect is it only affected, quote, 3% of the trees. That masks the fact that in two of the historic neighborhoods, upwards of 50% of the properties would be burdened by these easements, which are far more onerous than necessary to support this project, and would suffer the loss of tree canopy. I have 14 seconds. If there's other questions, Judge, that you have, I'll address any other questions on rebuttal, and I appreciate it very much. This is an ongoing Federal action, and the non-Federal actor is properly before this Court and properly joined. Thank you. Thank you. May it please the Court, my name is Robert Oakley. I'm from the Department of Justice. I'm representing the FAA. I'm splitting the 15 minutes. Mr. Kirsch, who represents the Airport Authority, will take five minutes. I'm going to take 10. I know. I've got to watch the clock myself. Judge Gibbons, if I could go to a question you did not get an answer to, and then circle back to the whole question as to whether the case should be before the Court. There are about 3,400 trees in the area. So I think it's somewhere between 3% and 4%. Another factor is, though, that these are not all clumped together. The reason they're important is there are two runways, so there are four ends. So the trees are split up into four very distinct compass points on the compass from ends of the runway. So it's not like 104 trees, one big grove of trees. Now, to go back to Judge Clay's question, I think the answer is this case now is not properly before the Court. The FAA has no regulatory authority to tell the Airport Authority how it goes about solving the problem of intrusions into this airspace that's needed for nighttime instrument landings. The FAA can identify the problem and can tell them, well, you can't use that airspace until you deal with it. But, for example, in the environmental assessment that was done here, there was another proposal that was carried all the way through, and that was to put red lights on top of the trees. Well, it was rejected, not because it wouldn't have done the job, but because it was considered too intrusive. And I think it probably was too intrusive. But my point is that if they, for whatever reason, the Airport Authority said, well, we're going to put those lights up there, I think the homeowners would be more upset. But if they said and they did that, the FAA would have no choice but to approve them for night, to return to the... The FAA, the point is, the FAA is not the federal entity that would ordinarily enforce federal environmental laws. Well, that's... I mean, obviously, the relevant determination here was whether there would be significant environmental impact. But beyond that, you're primarily concerned with certifying whether they can fly certain kinds of flights. That's correct. The FAA's prime mission is air safety. And so if the argument is that by imposing air safety, that the FAA then federalizes any action taken by a local entity to meet those air safety rules, making it always subject to NEPA and subject to review by federal courts, that's a tremendous extension of power. In this case, had the Airport Authority been understood from day one that this process was going to take longer than they thought and not have applied for federal funds, the FAA would not be involved in this process. There wouldn't have been an environmental assessment. And it just simply proves too much to say in some sort of but-for causation, which the Supreme Court rejected that for NEPA in the public citizen's decision, that because the FAA is the first step in the process or because some authority is taking steps to deal with safety concerns, that's automatically federalized, I think, is just not supported by the law and is inconsistent again with the Supreme Court's decision in public citizen. The injury here that the petitioners are concerned about is the loss of some trees is not the result of the FAA's decision here. The FAA's decision accepting the environmental assessment and making a finding of no significant impact didn't even approve money itself. In other words, it specifically states in the record of decision no funds are going to be dispersed as a result of this decision. It would have taken further action if the Airport Authority decided to continue and decided it did not want to and therefore the FAA is really out of the business of telling them what to do. And I think this is very similar to the D.C. Circuit's decision that we cite in the St. John's United Church of Christ versus FAA where the D.C. Circuit held that it was an O'Hare expansion project that was being litigated in D.C. nonetheless and the court said very simply that there's no standing here because the city of Chicago can and has made clear it will go ahead on its own funds and on money to take care of the project. If I could briefly address the question of whether of the merits here. If the court gets to that, the National Historic Preservation Act, a massive report was prepared for the FAA and for the Airport Authority where someone who is clearly qualified looked at all the areas, all the trees, gave you history, pictures, etc. It fills hundreds of pages. It's a qualified expert and the government's entitled to rely on a qualified expert's opinion. It's not in an administrative law case. This court's responsibility to engage in a battle of the experts. And I think for those reasons, our view is that the court should dismiss the petition but if the court reaches the merits, nothing I think that's been said today changes our position that the agency took a hard look at the environmental impacts and correctly made a finding that there'd be no adverse impact relying on this massive study. And the court should, in that case, deny the petition. And I'll turn it over to Mr. Kirsch for the rest of the argument. May it please the court, I'm Peter Kirsch with the law firm of Captain Kirsch and Rockwell representing the Louisville Regional Airport Authority. In my limited time here today, I would really just like to make two quick points that Your Honor, Judge Clay seems to have grasped already, which is that the petitioners lack Article III standing because they cannot prove that an order of this court that would set aside the FAA decision would address or redress their alleged injuries, given that the Louisville Regional Airport Authority, LRAA board, has already made a decision not to use and not to seek federal funds for the acquisition of easements for the trimming of trees. My second point is just to update the court on the status of the easements on the ground and simply stated most of the easements have been acquired and the trimming should be completed during the current trimming season. And so the timing is such that there's nothing left to do. How many trees would be cut down pursuant to this project? We're talking roughly 100. And of the easements that have been acquired and those that have not, how many are left to be acquired? There are 45 easements that need to be acquired. 44 of those have either been acquired or the right to take under state condemnation law has already been established. So 44 of the 45, the authority currently has rights to those. And the one remaining easement is Petitioner Coffman that the authority has not yet sought condemnation against. So I think what's important here is that unlike many other FAA decisions that come in front of this court and other courts, the issue here is very, very narrow because the only question, the only decision the FAA made was whether grant funding under the Airport Improvement Program would be available to the LRAA to help fund this program. The unrebutted evidence is that the LRAA needs no FAA authorization, no federal approvals, in order to complete the program of acquiring the easements and trimming the trees. The board has made the decision not to seek federal funding. Unlike many FAA decisions, which embody a whole series of approvals, the decision at issue here, that is the FAA decision that's before this court, is limited to the eligibility for federal grant funds. And given that the authority has made the decision not to seek those funds, there's nothing left here. That is, even if this court were to remand the FAA funding eligibility decision, that decision would effectively be purely advisory. As this court held in the Southwest Williamson County cases, the test for mootness is whether or not the relief that this court granted would make a difference to the petitioners. And the answer is it would have no effect on the ground since the airport authority needs no federal approvals, no FAA approvals to move forward. The LRAA... Let me ask you this. Are you aware of any cases where federal environmental reviews, such as being sought by the plaintiffs here, has been required where there was no federal funding being sought for a project of this nature? Well, certainly the FAA within the boundaries of the airport has considerable regulatory authority, and they're frequently FAA decisions having to do with the operation and the development of the airport. These trees are off the airport, and that's important. That's why the FAA decision in this issue was limited to the question of the funding. There are many instances where the FAA does environmental review for projects on an airport where the FAA has regulatory approvals. There are other federal approvals that are needed as well for projects, building terminals, building runways on an airport. Well, they're off the airport, but it's an airport-related project. Very, very different, though. Yeah, but I mean, well, are there any analogous situations, analogous to this, where FAA approval was implicated in relation to federal environmental review? I think the closest case is probably the St. John's Unified, I'm sorry, St. John's United Church case out of Chicago O'Hare, which in many respects was similar to this. That was part of the O'Hare modernization program, a multibillion-dollar program that involved lots of federal approvals, lots of environmental review, and one little piece of that was the issue of whether to relocate a cemetery. No federal approvals were needed for that, but the city of Chicago had originally sought funding for that. When the city of Chicago said they were not going to seek funding for that anymore, there was no more federal nexus for that component of the project, and the court in that case held that, in fact, there was no federal approval, there was no standing, there was no Article III standing. So the analogy, I think, to the St. John's case is very good in this instance. That is, unlike some FAA cases where there are a whole range of federal approvals, this was a very limited set of approvals. Today, with or without federal approval, the airport authority has authority under state law to condemn property, and we've cited the relevant provisions of Kentucky state law in our briefs, and the authority has the power, in fact, it has the obligation to ensure the safety of this airport. And that obligation is a continuing obligation. The authority does this every day. It takes actions to ensure the safety, whether it's trimming your trees or other things on the airport. In this particular instance, because the cost of purchasing easements and trimming trees was significant, the authority made the decision initially that it would seek federal funding to assist in this project, and the federal funding is available in certain instances for off-airport hazard mitigation, hazard obstruction removal, as in this instance. So the other piece I think that's important to keep in mind is that the airport authority is not properly here before you because the project isn't a federal action. Under 49 U.S.C. 46.110, which gives this court jurisdiction over this case, provides jurisdiction only over full review of FAA orders. Some of the cases in which the petitioners have cited, there have been significant federal involvement throughout the entire process, including the Maryland Conservation Council case, which is sort of thought of as the cardinal case in that area. The petitioners did not properly join the LRAA, although they say they joined the LRAA under 49 U.S.C. 46.109, that provision does not apply to FAA funding decisions. That provision only applies to FAA safety decisions. In this instance, the only decision the FAA made was to find the project eligible for federal grant funding. Now that the authority has decided not to seek that grant funding, there's nothing left. And going back, Your Honor, to your point about is there any effect at the end of the day, the answer is that the easements have almost all been acquired, with one exception. The trimming will be completed by the end of the current trimming season. And even if the court were to enter an order directing the FAA to redo its environmental review, that would not affect the airport authority's process. The plaintiffs other than Ms. Kauffman, have you entered into easements with them? They don't own any property on which there would be trees. So their argument for standing is even less than Ms. Kauffman. I think attenuated would be fair, yes. A plea for the trees, what's the nature of that? We don't really know what they are. I think I would call them informal. Are they an entity that can sue? They are not, as far as we understand, they are not a corporation. They're not a non-profit corporation. They're an unincorporated association of concerned citizens. I don't know how else to describe it, Your Honor. All right. So unless the court has any other questions, we would submit that the LRA is not properly before this court and that the petitioners do not have Article III standing even against the FAA because there's nothing left to decide here. The case is moot. Thank you, Your Honor. All right, thank you. Judge Clayton, let me apologize again for stepping over your question earlier. Oh, no problem. Let me describe the relief that we're seeking and work backwards from there if I could. We're seeking an order setting aside the finding of no significant impact of record of decision. It's being arbitrary, capricious, and inconsistent with law for failure to meaningfully consider the noise impacts associated with restoration of the night jet flights and the loss of mature canopy, for failing to assess the effects and alternatives to the use of abrogation easements on these historic properties when all they needed was a tree trimming agreement. Instead, they've acquired with a much more heavy hand and much more burdensome on these private landowners abrogation easements without ever assessing those alternatives, as well as the effect of these historic properties of the planned airport runway expansion that is in their airport layout plan. Perhaps the most egregious of the failings of the environmental assessment was the unsupported conclusion that replacing these mature tree canopy with two understory saplings was, quote, ensuring the homes within the affected neighborhoods retained value and character. That is grossly inadequate to meet their requirements under NEPA. With respect to section 106, we ask that the court find the decision of the FAA to pull the plug on consultation with the advisory council based on a faulty analysis and in the face of overwhelming evidence to the contrary that the trees played no role in what distinguishes these historic neighborhoods and that the removal of 104 additional mature trees above those previously removed would have no adverse effect. The finding was preordained by the FAA even before the 106 process began. As early as 2015, the appendix volume 1 at page 223 will reflect this. They had already decided that they would issue a no adverse effect determination and they would anticipate an appeal to the ACHP and they would again issue a no adverse effect determination even before they'd begun the 106 process. The conclusion that the trees are not a contributing part of the historic landscapes was contradicted by the FAA's own staff who observed that the existing vegetation as a whole reinforces the original design intent of the garden suburbs. In weighing this evidence, the consultant's report was heavily criticized by the man who literally wrote the book on the importance of natural landscapes in garden suburbs, Dr. David Ames. What we're looking for is not merely a temporary injunctive relief to prevent further tree trimming as part of this major federal action but also adequate mitigation, adequate consideration of the historic value of these suburbs and the vegetation that is an integral part of these landscapes. So in answer to it, and I thought the Slater court was really distilled it down, mootness means there's no meaningful relief left to be granted. There is meaningful relief here because the meaningful relief is not merely the matter of the tree cutting. It's a matter of whether these abrogation easements were more heavy handed than they needed to be, the analysis of what those impacts on the park, which is an Olmstead design park R, which was never taken into account because they weren't supposed to get an easement in the first place. It was supposed to be an agreement and suddenly they take a much more onerous easement over a public park that was never analyzed. The last point is the joinder was appropriate, a non-federal actor as part of an overall federal action that began with the FAA restricting the airspace. That wasn't a funding decision, which was this entire program, including the tree cutting and the easements, is intended to get federal approval at the end of the process. This has been, it's as if you have a bridge built from point A to point B. I want to wrap up. I'm sorry, Judge. I appreciate your time, I appreciate your questions. Thank you very much. Thank you.